Robinson Notion Co. v. Ormsby.

---

J. T. ROBINSON NOTION CO. v. ORMSBY & SWAYZEE.

[FILED JANUARY 4, 1892.]

Attachment : GROUNDS.   One A, who was engaged in the mercantile business, being considerably indebted for goods, traded his stock, which was worth about $2,000, for wild land of questionable value and incumbered, whereupon a creditor to whom he was indebted for goods attached the stock.   *Held*, That sufficient cause was shown for an attachment and that the district court erred in discharging it.

ERROR to the district court for Butler county.   Tried below before MARSHALL, J.

*J. H. Grimm, W. E. Bauer,* and *Steele Bros.,* for plaintiff in error.

*Matt. Miller*, and *E. R. Dean, contra.*

MAXWELL, J.

On the 2d day of March, 1889, plaintiff in error commenced an action in the district court of Butler county against the defendants to recover the sum of $487.33 for goods and merchandise sold and delivered to defendants, who were then engaged in the mercantile business in Dwight, Nebraska. On the same day an attachment was issued against the property of defendants in said case on the ground that they had disposed of their property with intent to defraud their creditors. And on the 6th day of March, 1889, the sheriff attached the stock of goods and merchandise as belonging to defendants and of the value of $————.

The defendants moved to dissolve said attachment for the reason that the statements made in the affidavit therefor were untrue. The motion was submitted to the court on affidavits and documentary evidence contained in the record. The court sustained said motion and dissolved the attachment.

The record also shows that subsequent to plaintiffs' attachment, to-wit, on the 7th and 8th days of March 1889, actions were commenced and attachments levied on this same stock of goods and merchandise by the Consolidated Coffee Company, H. T. Clarke Drug Co., E. M. Smith, and Sprick & Rigget, said attachments being issued on the same grounds as the attachment of this plaintiff. All of said attachments were prosecuted to judgment and said stock ot goods and merchandise ordered sold to satisfy their claims, without objection on the part of defendants.

It further appears from the records that on February 27, 1889, just prior to this attachment, while defendants owed large sums of money, George Ormsby traded the

stock of goods to Adelbert Birdsall, a brother-in-law of defendant living with the said George Ormsby, and received in consideration therefor 160 acres of uncultivated land in Holt county, Nebraska, without any improvements thereon, said land being mortgaged for $400 and taken subject to the mortgage.

The stock of goods was worth about $2,000, and apparently largely purchased on credit. This stock thus purchased the debtor claims that he had the right to trade off for unproductive property of doubtful value, and that by doing so he would not be hindering and delaying, if not defrauding, his creditors. No doubt there are cases where a person heavily indebted may trade productive property or property readily convertible into money for non-productive property, and there be no ground for charging him with attempting to delay or defraud his creditors. Each case must be determined by its own circumstances, but it is very evident that the owner of a stock of goods purchased with the understanding, implied at least, that he would act in good faith with his creditors, and if need be apply his property to the payment of his debts, cannot, without the consent of his creditors, dispose of such goods for incumbered and unproductive property which is practically unsalable, and under the most favorable circumstances would greatly delay the collection of the debt. If such transactions were sustained, it would result in most cases in defrauding creditors. The whole credit system rests upon the presumed honesty and integrity of those purchasing on credit. The law requires a debtor to hold all property not exempt ready to be applied to any legal demand.

From the first this court has, as far as possible, enforced the rule that a debtor apply his property in payment of his debts. Thus, in *Rogers v. Jones*, 1 Neb., 417, it was held that it would open a wide door to fraud to permit an insolvent to convert his property into notes payable to a friend, and that a creditor's bill would lie to reach

the friend.   In that case Jones, being insolvent, sold his stock to Ford for the agreed price of $4,100, taking his notes therefor, payable in six, twelve, eighteen and twenty-four months—the transaction concealed from the creditors. The transaction was held fraudulent as to creditors.   So here the debtor, being in straitened circumstances, disposed of his goods in such a way as to greatly delay, if not wholly defeat, his creditors.   On his own showing, there was sufficient cause for an attachment.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.